IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CONRAD SMITH, DANNY MCELROY, BYRON EVANS, GOVERNOR LATSON, MELISSA MARSHALL, MICHEAL FORTUNE, JASON DEROCHE, and REGINALD CLEVELAND,<br><br>*Movants*,<br><br>v.<br><br>CAROLINE WREN,<br><br>*Respondent*. | Misc. Case No.<br><br>Re: Civil Action No. 1:21-cv-02265, Action pending in the United States District Court for the District of Columbia, Hon. Amit P. Mehta |

**PLAINTIFFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA *DUCES TECUM***

Pursuant to Federal Rule of Civil Procedure 45 ("Rule 45"), movants Conrad Smith, Danny McElroy, Byron Evans, Governor Latson, Melissa Marshall, Michael Fortune, Jason DeRoche, and Reginald Cleveland ("Movants") respectfully move to compel Caroline Wren to comply with the non-party subpoena *duces tecum* dated April 25, 2024 (the "Subpoena," attached as **Exhibit 1**), issued by the United States District Court for the District of Columbia, and properly served on Ms. Wren in this District in connection with the pending civil action *Smith, et al. v. Trump, et al.*, Case No. 21-cv-02265-APM (D.D.C.) (the "Underlying Action" or "*Smith*").

**I.    Background**

    **A.    The Underlying Action**

Movants are United States Capitol Police Officers who suffered injuries as a result of the January 6, 2021 attack on the United States Capitol (the "January 6 Attack"). Movants filed the Underlying Action against former president Donald J. Trump ("Defendant Trump"), his 2020 presidential campaign entity Donald J. Trump for President, Inc. (the "Trump Campaign"), Stop the Steal LLC, and others for their roles in connection with the January 6 Attack. *See Smith*, ECF No.

89. Plaintiffs' claims in the Underlying Action include conspiracy to interfere with civil rights under 42 U.S.C. § 1985, battery, and assault. *See id.* Fact discovery in the Underlying Action is currently scheduled to conclude by January 27, 2025. *See Smith*, August 7, 2024 Minute Order.

  **B.**  **Ms. Wren's Relevance to the Underlying Action**

Ms. Wren is a Republican fundraiser who was closely involved in organizing the Save America Rally at the Ellipse in Washington, D.C., on January 6, 2021 (the "Rally"). *See* H.R. Rep. No. 117-663, 648 (2022), *available at* https://www.govinfo.gov/content/pkg/GPO-J6-REPORT/pdf/GPO-J6-REPORT.pdf (the "Select Committee Report"). On December 22, 2022, Julie Fancelli, a long-time donor to Defendant Trump, reached out to Ms. Wren regarding a donation to promote the Rally and increase attendance. *Id.* at 532. Ms. Wren then became heavily involved in planning the Rally and surrounding logistics. Indeed, she was listed as a "VIP ADVISOR" on the permit for the Rally. *See* Jacqueline Alemany, et al., *Backstage Drama at Jan. 6 Rally for Trump Draws Interest of House Committee*, Wash. Post (Feb. 26, 2022), https://www.washingtonpost.com/politics/2022/02/26/trump-pierson-wren/ (**Exhibit 2**). As part of that work, she coordinated with several of the planners about the Rally, including: Taylor Budowich, personal aide to Defendant Trump and Communications Director for Save America PAC; Kimberly Guilfoyle, Defendant Trump's son's girlfriend and a speaker at the Rally; Ali Alexander, national organizer and leader of Stop the Steal LLC; and Kylie Kremer of Women for America First, a primary organizer for the Rally. *See* Caroline Wren Dep.[1] Tr. 61:23-62:16 (Dec. 17, 2021) (excerpts attached as **Exhibit 3**); *see also* Select Committee Report at 532.

---

[1] The United States House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee") deposed or interviewed numerous individuals relevant to the January 6 Attack. The transcripts from those depositions and interviews are publicly available, and Movants relied on information in Ms. Wren's transcript to identify facts relevant to their claims, which informed the requests in the Subpoena.

Ms. Wren acted as a key contact between Defendant Trump, the Trump Campaign, and event organizers such as Women for America First. Ms. Wren exchanged plans for the event with Katrina Pierson, an advisor to the Trump Campaign, and Justin Caporale, Defendant Trump's former staffer who was closely involved in planning the Rally. Select Committee Report at 533. They both texted her in advance of the Rally that Defendant Trump intended to start a march to the Capitol. *Id.* Ms. Wren and Mr. Caporale texted about when Defendant Trump would direct the march to the Capitol during the Rally. *See* Justin Caporale Dep. 44:1-19 (Mar. 1, 2022) (excerpt attached as **Exhibit 4**). Ms. Wren helped arrange for Ali Alexander, the leader of the Stop the Steal movement, to promote the Rally. *Id.* at 532. Ms. Wren worked on the initial speaker list for the Rally, suggesting Mr. Alexander, Roger Stone, and Alex Jones—two other individuals associated with the Stop the Steal movement—as speakers. *See* **Exhibit 2**. Ms. Wren also prepared the speech that Ms. Guilfoyle gave at the Rally. *See* Wren Dep. at 215:20–216:5 (excerpt attached as **Exhibit 3)**. On January 6, 2021, during the Rally, Ms. Wren even communicated with Mr. Alexander—among others—regarding exact logistics for marching to the Capitol. Select Committee Report at 648.

### C. Plaintiffs' Subpoena to Ms. Wren

Based on her involvement with the Rally, Movants identified Ms. Wren as a third-party subpoena target who can provide information relevant to their claims. The Subpoena requests documents regarding the Rally, including planning the programming, fundraising, communications about planning, the VIP section, security, and encouraging attendance. *See* **Exhibit 1**.

### D. Ms. Wren's Failure to Respond to the Subpoena

Movants spent more than a year attempting to serve Ms. Wren. They made several attempts to personally serve her, but the process server was unable to reach Ms. Wren during each attempt. *See* **Exhibit 5**. Movants also sent letters to Ms. Wren at three different addresses via USPS certified

mail, *see* **Exhibit 6**, but received no response. Movants also sent letters to three attorneys who previously represented Ms. Wren, *see* **Exhibit 7**, but received no response. Movants then discovered that Ms. Wren was at her home in Palm Beach County, Florida, and, after three unsuccessful attempts, they successfully personally served the subpoena on Ms. Wren on May 21, 2024. *See* **Exhibit 8**.

Ms. Wren has failed to respond to the Subpoena.[2] Movants last contacted Ms. Wren by sending her a letter via email and USPS certified mail on August 13, 2024, *see* **Exhibit 10** (not including Subpoena), but she has not responded.[3] Accordingly, Movants request that this Court compel Respondent to comply with the Subpoena.

## II. Standard of Review

Rule 45 permits a party to an action to command a non-party to produce "documents, electronically stored information, or tangible things at a place within 100 miles of where the [non-party] resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). "A subpoena must issue from the court where the action is pending," Fed. R. Civ. P. 45(a)(2), and "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection," Fed. R. Civ. P. 45(d)(2)(B)(i).

---

[2] On July 23, 2024, Movants contacted three attorneys who represented Respondent in different actions to inquire whether they represent her in connection with the Subpoena. *See* **Exhibit 9** (not including Subpoena). One of those attorneys responded on August 2, 2024, stating that he no longer represents Respondent. The other two attorneys have not responded to Movants.

[3] This motion is therefore timely under S.D. Fla. L.R. 26.1(g)(2); *see Terraform Labs Pte. Ltd. v. Citadel Sec., LLC*, No. 1:23-CV-01346-JSR, 2023 WL 8679668, at *4 (S.D. Fla. Nov. 17, 2023) (interpreting the time under Local Rule 26.1(g)(2) to begin once correspondence between the parties has reached impasse).

4

The requests for production of documents must be relevant to the Underlying Action in accordance with the standards of Fed R. Civ. P. 26(b)(1), which permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Terraform Labs Pte. Ltd. v. Citadel Sec., LLC*, No. 1:23-CV-01346-JSR, 2023 WL 8679668, at *3 (S.D. Fla. Nov. 17, 2023). The serving party should tailor the requests in the subpoena "to avoid imposing undue burden or expense" on the subpoenaed party. Fed. R. Civ. P. 45(d)*; see also Terraform*, 2023 WL 8679668, at *3. Courts consider whether there is an undue burden by weighing "(1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Coleman v. Lennar Corp.*, No. 18-MC-20182, 2018 WL 3672251, at *4 (S.D. Fla. June 14, 2018). The court may also consider the expense and inconvenience to the non-party. The party opposing the subpoena must prove why the subpoena is unduly burdensome, while the party serving the subpoena must demonstrate why the requests are relevant. *See id.* at *3.

The subpoenaed party may object to the subpoena, but they must do so before the time specified on the subpoena or within 14 days of receiving the subpoena. Fed. R. Civ. P. 45(d)(2)(B). If the subpoenaed party does not object in a timely fashion, they waive any objections. *See PDV USA, Inc. v. Rivera*, No. 1:24-CV-20456-MD, 2024 WL 3360440, at *5 (S.D. Fla. May 6, 2024).

**III.     This Court Should Enforce the Subpoena Against Ms. Wren.**

Movants respectfully request that this Court enforce the Subpoena and compel Ms. Wren's compliance. *First*, this Court has jurisdiction to enforce the Subpoena because compliance is required within this Court's district. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). Compliance is required at 1441 Brickell Avenue, Miami, Florida 33131, which is within 100 miles of Ms. Wren's residence where the Subpoena was served. Therefore, this Court has jurisdiction to enforce the Subpoena.

5

*Second*, the Subpoena requests materials that are relevant to Movants' claims in the Underlying Action. The predominant claims remaining in that action are claims under 42 U.S.C. § 1985 for conspiracy to interfere with civil rights. Under that claim, Movants allege: (i) "Each Defendant agreed with one or more other persons to prevent, by force, intimidation, and threats, (1) members of Congress, Congressional staff, or United States Capitol Police officers from discharging their lawful duties as officers of the United States and holders of an office, trust, or place of confidence under the United States, or (2) President Biden and Vice President Harris from accepting or holding an office, trust, or place of confidence under the United States"; (ii) "Each Defendant agreed with one or more other persons to injure a member of Congress or a United States Capitol Police officer on account of their lawful discharge of their duties as officers of the United States, or to injure them while they were engaged in the lawful discharge thereof"; and (iii) Each Defendant agreed with one or more other persons to injure a member of Congress or a United States Capitol Police officer on account of their lawful discharge of their duties as officers of the United States, or to injure them while they were engaged in the lawful discharge thereof." *Smith*, ECF No. 89 at 168. The Defendants that Movants target include Defendant Trump, the Trump Campaign, and Stop the Steal LLC. *See id.*

The Rally and January 6 Attack are key events underlying these claims. The Rally plays an integral role in the conspiracies alleged in Movants' complaint. Therefore, information related to planning the Rally is important to proving Movants' claims. This includes information and communications about planning, programming, fundraising, the VIP section, security, and encouraging attendance. Ms. Wren was involved in all of these aspects when planning the Rally. *See supra* Section I.B. She was a key fundraiser for the event, arranging a large donation from Julie Fancelli. *See* Select Committee Report at 531-32. She was in close contact with members of the

6

Trump Campaign, including Ms. Pierson and Mr. Budowich, about planning the Rally. *See supra* Section I.B. Ms. Wren was also in close contact with Mr. Alexander and Mr. Jones, who are both connected to Stop the Steal, even pushing for them to speak at the Rally. *See supra* Section I.B. Stop the Steal LLC is a defendant in the Underlying Action and alleged co-conspirator in Movants' section 1985 claim; information that Ms. Wren may have about their involvement in the Rally is also relevant to Movants' claims. *Smith*, ECF No. 89 at 170. Because the requested documents focus on Ms. Wren's efforts to plan these events, the documents are directly relevant to Movants' claims. *See Drone Nerds Franchising, LLC v. Childress*, No. 19-CV-61153, 2021 WL 7543800, at *3 (S.D. Fla. Nov. 15, 2021).

*Third*, Ms. Wren has waived any objections to the Subpoena by failing to respond within 14 days of its service on May 16, 2024. *See* Fed. R. Civ. P. 45(d)(2)(B); *Trujillo v. USAA Cas. Ins. Co.*, No. 11-80320-CIV, 2012 WL 12855428, at *2 (S.D. Fla. May 2, 2012) (finding that subpoena recipient waived right to raise new objections because they were untimely). In any event, complying with the Subpoena will not impose an undue burden on Ms. Wren. Movants request only documents that are not available in the public record or from other parties to the Underlying Action. *See Coleman*, 2018 WL 3672251 at *10 (holding that discovery requests were proper because they could not be sought from other sources). The requests are also narrowly tailored, specifying time periods and relevant individuals, and they provide detailed definitions to dictate the scope of the requests. *See id.* at *7 (holding that requests do not impose an undue burden because they "carefully target an identifiable group of documents" so that the subpoenaed party does not need to guess about what to produce). Moreover, even the inherent burdens of collection and production are minimal because Ms. Wren previously produced many of the requested documents to the Select Committee to Investigate the January 6th Attack on the United States Capitol; therefore, many of

the responsive documents likely are already collected and can be re-produced easily. *See generally* Select Committee Report.

## IV. Conclusion

For these reasons, this Court should compel Ms. Wren to comply with the Subpoena.

Dated: September 5, 2024          Respectfully submitted,

*/s/ Elizabeth B. Honkonen*
Elizabeth B. Honkonen (FBN 0149403)
KENNY NACHWALTER, P.A.
Four Seasons Tower - Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile:   (305) 372-1861
ebh@knpa.com