IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CONRAD SMITH, DANNY MCELROY, BYRON EVANS, GOVERNOR LATSON, MELISSA MARSHALL, MICHEAL FORTUNE, JASON DEROCHE, and REGINALD CLEVELAND,<br><br>*Movants*,<br><br>v.<br><br>CAROLINE WREN,<br><br>*Respondent*. | Misc. Case No. 9:24-mc-81074-DMM<br><br>Re: Civil Action No. 1:21-cv-02265, Action pending in the United States District Court for the District of Columbia, Hon. Amit P. Mehta |

## MOVANTS' MOTION FOR LEAVE TO DEPOSE RESPONDENT

Pursuant to Fed. R. Civ. P. 45(g), movants Conrad Smith, Danny McElroy, Governor Latson, Melissa Marshall, Michael Fortune, Jason DeRoche, and Reginald Cleveland ("Movants")[1] respectfully move the Court for entry of an Order directing Respondent Caroline Wren to appear for deposition for the limited purpose of questioning her regarding her search and production of documents in response to Movants' non-party subpoena *duces tecum* dated April 25, 2024 (DE 1-2)(the "Subpoena"), issued by the United States District Court for the District of Columbia, and properly served on Ms. Wren in this District in connection with the pending civil action *Smith, et al. v. Trump, et al.*, Case No. 21-cv-02265-APM (D.D.C.) (the "Underlying Action" or "*Smith*"). The Honorable Amit Mehta, the presiding judge in *Smith*, considers Movants' deposition of Ms. Wren warranted and acceptable subject to this Court's ruling as the tribunal with jurisdiction over Respondent and this matter.

As set forth below, only after an order sanctioning her for non-compliance, did Respondent produce any documents in response to the Subpoena. She limited her production to documents

---

[1] Byron Evans is no longer a Plaintiff in the Underlying Action. *See Smith,* DE 361.

she produced in response to other requests that did not ask for the all of the same documents sought here. Accordingly, it is unclear whether she has produced all responsive documents as ordered by the Court (DE 16, 23). Respondent has ignored Movants' repeated requests for information regarding the searches she performed in connection with those prior productions to understand whether those searches were sufficient to include all documents sought by Movants' Subpoena.

In order to understand whether Respondent's production is complete, Movants seek to depose Respondent for the limited purpose of addressing:

(i) the existence or non-existence of documents responsive to the Subpoena, including the basis for any assertions of non-existence;

(ii) Ms. Wren's searches (including the scope, the sources searched, and search terms and criteria) and other efforts to locate, identify, and produce materials responsive to the Subpoena, including materials previously produced in response to other subpoenas or requests relating to the events of January 6, 2021, as well as materials not requested or produced in response to other subpoenas or requests relating to the events of January 6, 2021; and

(iii) any additional searches, review, and forthcoming productions that may occur as a result of this Motion and/or the requested deposition.

**I.    Background**

    **A.    The Underlying Action**

Movants are United States Capitol Police Officers who suffered injuries as a result of the January 6, 2021 attack on the United States Capitol (the "January 6 Attack"). Movants filed the Underlying Action against President Donald J. Trump, in his individual capcity ("Defendant Trump"), his 2020 presidential campaign entity Donald J. Trump for President, Inc. (the "Trump Campaign"), Stop the Steal LLC, and others for their roles in connection with the January 6 Attack.

*See Smith*, DE 89. Movants' claims in the Underlying Action include conspiracy to interfere with civil rights under 42 U.S.C. § 1985, battery, and assault. *See id.* Certain fact discovery in the Underlying Action has been stayed until the *Smith* Court resolves Defendant Trump's pending motion for summary judgment on the ground of presidential immunity and Movants' motion to strike the United States's notices of substitution of itself for Defendant Trump as to tort claims arising under District of Columbia Law. *See Smith*, DE 393. At a status conference on October 7, 2025, Movants recounted for Judge Mehta in Smith their ongoing efforts to obtain discovery from Ms. Wren and Movants' need to depose her for a limited purpose relating to her document production. Defense counsel argued against Movants' request to seek Ms. Wren's deposition. Judge Mehta has expressly permitted Movants to continue to pursue this matter against Respondent:

> MR. BLECHMAN [Movants' counsel]:
>
> . . . [O]n October 1st, we filed a notice in the Southern District of Florida for [Ms. Wren's] non-compliance, only after which then, on October 6th, we finally received, via that email again [that Movants had used to transmit prior Orders and correspondence], additional documents.
>
> I tell you this background . . . because we still have a number of open questions about Ms. Wren's production, particularly because we think she's an important witness, third-party witness here. And we understand -- we know that there's a stay in place generally from merits discovery in the case.
>
> But under the circumstances as I've laid them out to you, what we respectfully request, [is] that we be allowed to go back to Judge Middlebrooks in the Southern District of Florida and seek from him an order allowing us to take her deposition merely and only for the limited purpose of understanding the scope of her search, where she looked for responsive documents, a description of her search, the existence of responsive documents of which she's aware and with whom she conferred.
>
> We're not looking to do a merits-based full

3

deposition of her. At some point in the future, we'll need that.[2] But given the history of our efforts to get Ms. Wren to just produce the documents, we feel -- not feel -- we are uncertain and unsettled about whether we have what we actually asked for and need.

So our request for Your Honor to consider is granting us permission to go back to Judge Middlebrooks in the Southern District of Florida to ask him for permission to take her deposition for the limited purpose I described to you.

THE COURT: That's certainly – that's acceptable to me.
She's clearly been an obstreperous third party. And so if Judge Middlebrooks is prepared to grant the deposition, I leave that up to him, ultimately, of course, but you certainly have my permission to move forward in that manner.

MR. BINNALL:[3]

. . . I will just say that, for the sake of judicial efficiency, if there's going to be other depositions, A, we would ask that that be taken up after the stay would expire when the Court makes its decision, not while there's a stay in place. And if there is a -- since there is a stay in place, we're going to lift that, there's actually an opportunity to be heard on that.

Having multiple depositions of a witness in a foreign jurisdiction is something that is expensive, it takes the resources of the parties right now, and there's a stay for a reason, and we'd ask that that stay be respected.

THE COURT: Well, I will say the following, which is that, I'd agree with you in ordinary circumstances, but, you know, I think the concern is warranted that we have a witness here who clearly has tried to avoid her

---

[2] This Motion does not seek a merits deposition of Ms. Wren. Movants reserve their right to conduct a full merits deposition of Ms. Wren after the stay has been lifted.

[3] Mr. Binnall represents Donald J. Trump for President, Inc., and Make America Great Again PAC in *Smith*. Jason Greaves, also with Binnall Law Group, has appeared in this case (DE 26).

obligations.

I don't know what Judge Middlebrooks is going to do about the sanctions, the monetary sanctions, but, you know, I have a concern of her continuing to evade her responsibilities, and, frankly, ultimately to make sure that she's preserving any documents that need to be disclosed.

And so I think this is a one-off. I don't think this sort of opens the door to any other type of discovery, and so -- and if you'd like to -- so I'll just leave it there.

MR. BINNALL: Your Honor, all's I would ask is, I mean, if there's – she's under a duty right now to preserve documents, there's no doubt about that, because there's outstanding subpoenas. I just ask that we take this up after the stay is lifted. That's all.

And I don't think there is prejudice to doing that, but there definitely is prejudice to continuing to take discovery and a misuse of judicial resources right now to do that.

THE COURT: Well, I guess I'm not sure what the misuse of judicial resources is.

I mean, to – it's the third party that is creating the circumstances, it's not plaintiffs, and so I don't think it is a misuse.

And this doesn't seem like it's going to be a deposition that, if it's granted by the judge, will require that many resources. Certainly people can participate remotely if they wish, given the limited nature of the requests.

So I think I'll just leave it there, okay?

MR. BINNALL: Okay.

**Exhibit 1** at 15:9-16:21, 19:1-20:24 (10/7/25 Hrg. Tr.).

5

B.     **Ms. Wren's Relevance to the Underlying Action**[4]

Ms. Wren is a fundraiser who was closely involved in organizing the Save America Rally at the Ellipse in Washington, D.C., on January 6, 2021 (the "Rally"). *See* H.R. Rep. No. 117-663, 648 (2022), *available at* https://www.govinfo.gov/content/pkg/GPO-J6-REPORT/pdf/GPO-J6-REPORT.pdf (the "Select Committee Report"). On December 22, 2022, Julie Fancelli, a long-time donor to Defendant Trump, reached out to Ms. Wren regarding a donation to promote the Rally and increase attendance. *Id.* at 532. Ms. Wren then became heavily involved in planning the Rally and surrounding logistics. Indeed, she was listed as a "VIP ADVISOR" on the permit for the Rally. *See* Jacqueline Alemany, et al., *Backstage Drama at Jan. 6 Rally for Trump Draws Interest of House Committee*, Wash. Post (Feb. 26, 2022), https://www.washingtonpost.com/politics/2022/02/26/trump-pierson-wren/. As part of that work, she coordinated with several of the planners about the Rally, including: Taylor Budowich, personal aide to Defendant Trump and Communications Director for Save America PAC; Kimberly Guilfoyle, Defendant Trump's son's girlfriend and a speaker at the Rally; Ali Alexander, national organizer and leader of Stop the Steal LLC; and Kylie Kremer of Women for America First, a primary organizer for the Rally. *See* Caroline Wren Dep.[5] Tr. 61:23-62:16 (Dec. 17, 2021); *see also* Select Cmtee Rpt. at 532.

Ms. Wren acted as a key contact between Defendant Trump, the Trump Campaign, and event organizers such as Women for America First. Ms. Wren exchanged plans for the event with

---

[4] The Exhibits supporting the facts recited in this Motion were filed in connection with Movants' Motion for Contempt and Sanctions Against Respondent (DE 17) and are not reattached to this Motion.

[5] The United States House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "January 6 Committee" or "Select Committee") deposed or interviewed numerous individuals relevant to the January 6 Attack. The transcripts from those depositions and interviews are publicly available, and Movants relied on information in Ms. Wren's transcript to identify facts relevant to their claims, which informed the requests in the Subpoena.

Katrina Pierson, an advisor to the Trump Campaign, and Justin Caporale, Defendant Trump's former staffer who was closely involved in planning the Rally. Select Cmtee Rpt. at 533. They both texted her in advance of the Rally that Defendant Trump intended to start a march to the Capitol. *Id.* Ms. Wren and Mr. Caporale texted about when Defendant Trump would direct the march to the Capitol during the Rally. *See* Justin Caporale Dep. 44:1-19 (Mar. 1, 2022). Ms. Wren helped arrange for Ali Alexander, the leader of the Stop the Steal movement, to promote the Rally. *Id.* at 532. Ms. Wren worked on the initial speaker list for the Rally, suggesting Mr. Alexander, Roger Stone, and Alex Jones—two other individuals associated with the Stop the Steal movement—as speakers. Ms. Wren also prepared the speech that Ms. Guilfoyle gave at the Rally. *See* Wren Dep. at 215:20–216:5. On January 6, 2021, during the Rally, Ms. Wren even communicated with Mr. Alexander—among others—regarding exact logistics for marching to the Capitol. Select Committee Report at 648.

### C. Movants' Subpoena to Ms. Wren

Based on her involvement with the Rally, Movants identified Ms. Wren as a third-party subpoena target with information relevant to Movants' claims. The Subpoena requests documents regarding the Rally, including planning the programming, fundraising, communications about planning, the VIP section, security, and encouraging attendance. (DE 1-2)

### D. Ms. Wren's Non-Compliance and Failure to Respond.

As detailed in Movants' initial Motion to Compel (DE 1), Movants spent more than one year attempting to serve the Subpoena on Ms. Wren before they succeeded in personally serving her on May 21, 2024. On September 5, 2024, after Ms. Wren failed to respond to the subpoena and follow-up correspondence, Movants sought relief in this Court. (DE 1)

On September 11, 2024, this Court ordered Ms. Wren to secure counsel or advise the Court of her intent to proceed *pro se* and directed Movants to serve Ms. Wren with the initial Motion to

Compel and Court's Order. (DE 3) Movants attempted to serve Ms. Wren but were unsuccessful. (DE 5) On October 2, 2024, this Court entered an Order directing the U.S. Marshals to serve Ms. Wren with Movants' initial Motion to Compel, as well as other related filings and orders (together, the "Subpoena Materials"). (DE 6)

The U.S. Marshals successfully personally served Ms. Wren with the Subpoena Materials on February 7, 2025. (DE 12)

After being served (again), Ms. Wren made no appearance in this case and did not contact Movants' counsel. Therefore, on April 4, 2025, Movants sent a letter to Ms. Wren via certified U.S. Mail, to which Ms. Wren did not respond.

On April 24, 2025, Movants filed a *Renewed* Motion to Compel. (DE 15) On April 29, 2025, the Court entered an Order granting the *Renewed* Motion to Compel (DE 16) (the "Order to Compel"). In the Order to Compel, the Court (i) found that Respondent had waived any objections to the Subpoena; and (ii) ordered that "[o]n or before **May 16, 2025**, Respondent **SHALL PRODUCE** to Movants all responsive documents that fall within the scope of Movants' subpoena (DE 15-1)." (emphasis in original)

On June 17, 2025, Movants filed their Motion for Contempt and Sanctions Against Respondent (DE 17). Following a remote hearing on July 9, 2025, the Court entered an Order on Motion for Contempt (DE 23) (the "Contempt Order"). Among other things, the Contempt Order: (i) found Respondent "**IN CIVIL CONTEMPT** for failure to abide by the Court's instructions issued in its Order to Compel"; (ii) ordered that "[u]ntil Respondent produces ***all responsive documents*** that fall within the scope of Movants' subpoena (DE 15-1), Respondent **SHALL PAY** a

8

daily fine of **$2,000.00**"; and (iii) advising Respondent that failure to comply may result in additional sanctions, **_including possible confinement_**." (bold underling emphasis in original; bold italics emphasis added)

At 4:56 p.m. on July 9, 2025, hours after this Court entered the Contempt Order, Ms. Wren emailed undersigned counsel with documents. In her cover email, Ms. Wren advised: "Here's everything my attorney sent to the January 6 committee and the DOJ." **Exhibit 2** (1/8/26 Declaration of E. Honkonen) at ¶4.

On August 12, 2025, using the same email address that Ms. Wren used to transmit her production, undersigned counsel wrote to Ms. Wren identifying known discrepancies in her production and, because Ms. Wren appeared to have limited her production to documents she previously produced to the January 6 Committee and to the DOJ in response to their subpoenas, undersigned counsel also requested information about the searches she conducted for responsive documents. Undersigned counsel received no response. *See id.* at ¶5.

On September 23, 2025, undersigned counsel wrote to Ms. Wren again to try to resolve the issues with her production without the Court's involvement. Undersigned counsel received no response by the requested response date of September 30, 2025. *See id.* at ¶6.

On October 1, 2025, Movants filed a Notice of Respondent's Non-Compliance with the Court. (DE 25)

On October 6, 2025, Ms. Wren produced to Movants' counsel the subpoenas she received from the DOJ and the January 6 Committee, as well as two videos that Movants had previously identified as missing from her production. Ms. Wren did not provide any information in response to Movants' inquiry about the search she conducted for responsive documents. *See* **Ex. 2** at ¶8.

On October 13, 2025, Movants again wrote to Ms. Wren regarding her search for documents and advised that they would seek this Court's leave to take her deposition regarding her search for documents. *See id.* at ¶9.

On October 29, 2025, Ms. Wren contacted undersigned counsel by telephone, stated that everything sought by Movants' Subpoena had already been requested by the DOJ and January 6 Committee, and requested that Movants identify with specificity the requests and information that Movants believe had not been previously requested by and produced to the DOJ and January 6 Committee. *See id.* at ¶10.

Thereafter, Movants' counsel re-reviewed Ms. Wren's document production, compared Movants' Subpoena to the requests from the DOJ and January 6 Committee, and sent Ms. Wren a detailed letter on November 21, 2025 that: (i) identified differences between the Movants' Subpoena and the DOJ and January 6th Committee subpoenas previously issued to Ms. Wren; (ii) repeated Movants' request for information regarding the sources Ms. Wren searched and the search terms she used for her prior productions to the DOJ and January 6th Committee; and (iii) sought confirmation that she had produced all documents responsive to Movants' Subpoena. Movants requested that Ms. Wren respond to the letter by December 3, 2025. *See id.* at ¶11.

On December 10, 2025, Ms. Wren sent an email in response to the November 21, 2025 letter. In her email, Ms. Wren did not provide or agree to provide the information Movants requested regarding the search terms and sources for her production. Ms. Wren's email accused Movants of misstating the contents of her production and lying to the Court. *See id.* at ¶12.

On December 16, 2025, Movants responded to Ms. Wren's email, including her accusations, which Movants believe are misplaced. Movants reiterated their request for Ms. Wren to

identify the prior search terms and sources. Movant also requested to speak with Ms. Wren prior to filing their December 18, 2025 Status Report. *See id.* at ¶13.

In their December 18, 2025 Status Report (DE 31), Movants advised the Court that, on or before January 8, 2026, absent Ms. Wren's written representation that she will provide the requested source and search information by an agreed-upon date, Movants intend to seek further relief from the Court. Movants served that Status Report upon Ms. Wren. In addition, undersigned counsel emailed Ms. Wren a final time on January 7, 2026, reiterating Movants' intention to seek her deposition regarding her production. *See id.* at ¶14.

As of the filing of this Motion, Ms. Wren has not advised Movants that she will provide the requested source and search information.

**II.     The Court Should Grant Movants Leave to Depose Ms. Wren.**

After months of non-compliance, orders compelling production that were ignored, and ultimately a finding of contempt and the imposition of a daily sanction of $2,000, Ms. Wren produced materials in response to the Subpoena that, by her own account, are limited to what she previously produced to the DOJ and to the January 6 Committee. The nature of Ms. Wren's production and her communications with Movants' counsel raise serious concerns as to whether she has conducted a full and good faith search for all materials responsive to the Subpoena. In particular, it is unclear whether she searched for additional documents responsive to the Subpoena that were not part of her prior productions to the DOJ and January 6 Committee.

Movants therefore seek this Court's permission to depose Ms. Wren so that Movants can verify whether, and the extent to which, she complied with the Subpoena. To that end, Movants seek permission to depose Ms. Wren in a targeted deposition focused on the existence of responsive materials and her search for and collection of responsive materials. This request for leave to

take Ms. Wren's deposition is not punitive, but supervisory, for the purpose of confirming compliance with the Subpoena and this Court's Orders and avoiding further motion practice.[6]

Federal courts have long recognized their "inherent authority to ensure compliance with [their] orders." *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1516 (11th Cir. 1987); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966). That authority is "extremely broad and flexible" and ensures that the court "has a means to vindicate its own authority." *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, 80 F.4th 1236, 1243 (11th Cir. 2023), *cert. denied sub nom. Hi-Tech Pharms., Inc. v. Fed. Trade Comm'n*, 144 S. Ct. 2603, 219 L. Ed. 2d 1253 (2024) (citation omitted).

Consistent with that authority, courts permit depositions and other compliance mechanisms as part of enforcing contempt and subpoena orders. *See, e.g., Cleopatra Diamonds, Inc. v. Jewelers' Mut. Ins. Co.*, No. 1:07-CV-2582-GET, 2008 WL 11336567, at *1–2 (N.D. Ga. Sept. 29, 2008) (finding nonparty in contempt for failure to comply with a subpoena for documents and ordering the nonparty to appear for a deposition at a time and place of defendant's choosing); *see also In re Application of LM Prop. Dev. Ltd.*, No. 22-62185-CIV, 2025 WL 915886, at *1–2 (S.D. Fla. Feb. 11, 2025) (imposing escalating compliance measures, including increased daily fines and attorneys' fees, after subpoena recipient failed to produce documents as ordered). Here, in light of the uncertainty as to the completeness of Ms. Wren's production, a limited deposition will enable Movants and the Court to determine whether Ms. Wren has fully complied with the Subpoena and this Court's orders.

### III. Conclusion

For these reasons, Movants respectfully request that this Court enter an Order:

---

[6] Should Ms. Wren's deposition reveal that she has not fully complied with the Subpoena and this Court's orders, Movants reserve the right to seek further relief against her. *See, e.g.,* DE 23.

**(i)** authorizing Movants to schedule a deposition of Ms. Wren for the limited purpose of addressing regarding her compliance with the Subpoena, including:

    (a)    the existence or non-existence of documents responsive to the Subpoena, including the basis for any assertions of non-existence of responsive documents;

    (b)    Ms. Wren's searches (including the scope, sources searched, and search terms and criteria) and other efforts to locate, identify, and produce materials responsive to the Subpoena, including materials previously produced in response to other subpoenas or requests relating to the events of January 6, 2021, as well as materials *not* requested or produced in response to other subpoenas or requests relating to the events of January 6, 2021; and

    (c)    any additional searches, review, and forthcoming productions that may occur as a result of this Motion and/or the requested deposition.

**(ii)** directing Ms. Wren to cooperate with undersigned counsel to schedule the deposition before February 20, 2026.

### CERTIFICATION PURSUANT TO S.D. FLA. L. R. 7.1(a)

Undersigned counsel hereby certifies that, as reflected above, undersigned counsel has repeatedly attempted to resolve the issues raised in this Motion with Ms. Wren through a letters and email correspondence (dated August 12, 2025, September 23, 2025, October 6, 2025, November 21, 2025, December 16, 2025, January 7, 2026), as well as a telephone call made on October 29, 2025. As of the filing of this Motion, Respondent has neither provided the requested information nor indicated that she will do so.

Dated: January 8, 2026                    Respectfully submitted,

                                               */s/ Elizabeth B. Honkonen*

        Elizabeth B. Honkonen (FBN 0149403)
Sperling Kenny Nachwalter, LLC
Four Seasons Tower - Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
ebh@sperlingkenny.com